1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANK CHAVEZ,                                No. C 04-1944 SI (pr)

        Petitioner,              **ORDER DENYING HABEAS PETITION**

    v.

SCOTT KERNAN, warden,

        Respondent.

_____/

**INTRODUCTION**

    This matter is now before the court for consideration of the merits of Frank Chavez's pro se petition for writ of habeas corpus concerning his 2000 conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

A.    The Crime

    The habeas petition concerns Chavez's conviction on a guilty plea for failing to register as a sex offender when his address changed. Because Chavez waived a preliminary hearing and pled guilty, the description of the factual basis for his crime is taken from the probation officer's pre-sentence report – a report Chavez does not dispute. See CT 49-73. The probation officer's report states that Chavez was required to register as a sex offender because of a 1994 conviction of assault with intent to commit rape. CT 50.

On September 14, 1998, the defendant registered as a sex offender at the San Jose Police Department with a residential address of 690 Hobie Lane.   On March 5, 1999, the defendant was arraigned for parole violation for Absconding Parole, Failure to Register as a Sex Offender and Failure to Register as a Narcotic Offender pursuant to Section 11590 PC.

* * *

On October 5, 1998, an officer of the San Jose Police Department assigned to the Sexual Assault Investigation Unit attempted to contact the defendant for the defendant to complete a profile interview questionnaire as part of the sex offender registration process.   When the officer went to the defendant's home at 690 Hobie Lane, he found a lock box on the doorknob and a "For Sale" sign.   The realtor indicated there were no occupants in the house.

On October 12, 1998, accompanied by the defendant's parole officer, officers of the San Jose Police Department went to the defendant's parent's house located at 2814 Cornwell Drive.   Before the officers could make contact with the defendant, he escaped by jumping over the backyard fence.  On October 20, 1998, an arrest warrant was issued.

CT 50-51.  Chavez was apprehended several months later in Nevada.

Chavez made a statement to the probation officer for use in the sentencing report.   In it, Chavez denied that he had escaped from his mother's house when officers attempted to contact him.   Chavez told the probation officer that his failure to register was not an attempt to evade supervision but the result of a "'misunderstanding and miscommunication.'"   CT 51.   Chavez told the probation officer that he had lived at the 690 Hobie Lane house, registered as a sex offender with that as his primary residence, moved out of the house after it was put up for sale, and then lived in his car because he had no place to go.   CT 51.   Chavez told the probation officer that "his attempts to contact his parole officer to notify him of the change of his residential status proved futile because, unbeknown to him, he had been assigned a new parole officer."   Id.   Chavez also told the probation officer that he did not know he had to notify the San Jose Police Department of a change of address, although he understood he had to notify his parole officer of a change of address.   Id.

The factual basis of Chavez's prior convictions used for sentence enhancement purposes were described in the probation officer's report.   CT 52-54.   The report also includes Chavez's 10-page rap sheet, CT 63-72, and a 1-page summary of his juvenile record.   CT 73.

B.      Case History

2

Chavez was charged by a felony complaint and later by an information that alleged that on or about October 12, 1998, Chavez failed to register as a sex offender after his address changed, in violation of California Penal Code § 290(g)(2).   CT 16, 25.   The information alleged enhancements for six prior "strike" convictions within the meaning of California Penal Code § 667(b-i) and § 1170.12 and five prior prison terms within the meaning of California Penal Code § 667.5(b).   Chavez waived his right to a preliminary hearing.   He later pled guilty and admitted that he had suffered the six prior convictions and five prior prison terms that had been alleged for sentence enhancement purposes.   The court declined to dismiss the prior convictions but did dismiss the prior prison terms.   Chavez was sentenced to 25 years to life in prison under California's Three Strikes Law.[1]

Chavez appealed.   The California Court of Appeal affirmed the judgment of conviction in a reasoned order.   The California Supreme Court summarily denied the petition for review.

Chavez then filed this action.   The court issued an order to show cause why the writ should not be granted on Chavez's claims that the sentence violated the Eighth Amendment's proscription on cruel and unusual punishment and that his attorney was ineffective in not asserting the cruel and unusual punishment argument.   Respondent filed an answer and Chavez filed a traverse.   In his traverse, Chavez attempted to assert several new claims.

---

[1]California's Three Strikes Law, which appears in California Penal Code § 667(b)-(i), was enacted by the Legislature and became effective March 7, 1994.   The heart of the Three Strikes Law is § 667(e), which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies, see Cal. Penal Code § 667(d). In addition to the California Legislature's version of the Three Strikes Law found at California Penal Code § 667, there is an initiative version of the Three Strikes Law found at California Penal Code § 1170.12.   The initiative version of the Three Strikes Law was passed by the voters several months after the Legislature's version.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the Eighth Amendment and ineffective-assistance claims. The exhaustion problem with regard to the other claims is discussed later in this order.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially

1    indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

2         "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

3    the state court identifies the correct governing legal principle from [the] Court's decisions but

4    unreasonably applies that principle to the facts of the prisoner's case."    Id. at 413.   "[A] federal

5    habeas court may not issue the writ simply because that court concludes in its independent

6    judgment that the relevant state-court decision applied clearly established federal law erroneously

7    or incorrectly.   Rather, that application must also be unreasonable."    Id. at 411.   A federal habeas

8    court making the "unreasonable application" inquiry should ask whether the state court's application

9    of clearly established federal law was "objectively unreasonable." Id. at 409.

10

11                                          **DISCUSSION**

12   A.    New Claims Raised In Traverse

13        Chavez's traverse attempted to raise several new claims that had not been included in his

14   original petition and as to which the court had not issued an order to show cause.   The new claims

15   asserted in the traverse were these:   (1) actual innocence, (2) counsel provided ineffective

16   assistance by failing to advise him that the prosecutor mistakenly charged him with a violation of

17   § 290(g)(2) instead of a different subsection of the failure-to-register statute, (3) the charging

18   instrument was ambiguous, (4) the sentence violated the Double Jeopardy Clause by punishing

19   Chavez again for old offenses, and (5) the sentence violated the Ex Post Facto Clause because it

20   increased the punishment for crimes already committed.[2]

21

22        State court remedies for new claims 1-3 have not been exhausted but have been exhausted

23   _____

24        [2]New claims 4 and 5 were not labelled as separate claims in the traverse and instead were
     just paragraphs within the claim in the traverse that the sentencing court failed to exercise its
25   discretion to strike any prior convictions.   The failure-to-exercise-discretion claim was included
     in the original petition and was dismissed by the court because it alleged only a state law error.
26   The claim as re-asserted in the traverse meets a similar fate: it must be dismissed because it
     alleged only a state law error.   The Double Jeopardy Clause and Ex Post Facto Clause arguments
27   are treated as separate claims and do not transform the sentencing court's alleged failure to
     exercise discretion at sentencing into a federal constitutional violation.

28

                                              5

1   for new claims 4 and 5.   Only new claims 4 and 5 were mentioned in the petition for review to the

2   California Supreme Court and therefore only those two claims were exhausted.

3   An unexhausted claim may be denied on the merits "only when it is perfectly clear that the

4   applicant does not raise even a colorable federal claim."   Cassett v. Stewart, No. 03-16573, slip

5   op. 4785, 4802-03 (9th Cir. May 3, 2005); see 28 U.S.C. § 2254(b)(2).   This court thus must

6   decide whether new claims 1-3 raise even a colorable federal claim such that they must be

7   presented to the state court before this court can reach the merits.   For the reasons discussed

8   below, the court concludes that none raises a colorable claim and therefore all of them can and

9   will be denied on the merits.

10   New claim 1 does not raise a colorable federal claim because it is settled that actual

11   innocence alone does not entitle one to the writ of habeas corpus.   "Claims of actual innocence

12   based on newly discovered evidence have never been held to state a ground for federal habeas

13   relief absent an independent constitutional violation occurring in the underlying state criminal

14   proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993).   Herrera made it clear that there can

15   be no habeas relief based solely on a petitioner's actual innocence of the crime.   See Coley v.

16   Gonzalez, 55 F.3d 1385, 1387 (9th Cir. 1995).   Actual innocence is not totally irrelevant,

17   however, because although it is not itself a claim, it can be a gateway through which a habeas

18   petitioner may pass to have his otherwise procedurally barred constitutional claim considered on

19   the merits.   See Herrera, 506 U.S. at 404.   Chavez's claim that he is actually innocent does not

20   state a colorable claim for relief because it provides no independent basis for federal habeas

21   relief.   New claim 1 is denied on the merits.

22   New claim 2 also does not raise a colorable federal claim.   Chavez contends in new claim

23   2 that his counsel was ineffective in failing to advise him that the prosecutor mistakenly charged

24   him with a violation of § 290(g)(2) instead of a different subsection of the failure-to-register

25   statute.   Chavez states that, "[f]or the purpose of this argument, petitioner may have, but is not

26   admitting that he did violate subdivision (f)(1) of section 290." Traverse, pp. 8-9.   The language

27   of the statute does not provide the loophole for which Chavez hopes.   In 1998 (the year when

28

Chavez committed the crime and was charged) California Penal Code § 290(g)(2) provided:

> Except as provided in paragraph (5), any person who is required to register under this section based on a felony conviction who willfully violates any requirement of this section or who has a prior conviction for the offense of failing to register under this section and who subsequently and willfully violates any requirement of this section is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years.

Cal. Penal Code § 290(g)(2) (1998 version).  Section 290(g)(2)'s references to "this section" refer to all subsections within § 290, including § 290(f)(1), which described the registration requirement upon a change of residence address.  To read the phrase "this section" otherwise, i.e., that it referred only to violations of subsection (g)(2) itself, would lead to an absurd result because subsection (g)(2) does not describe any independent duty.  Cf. People v. Black, 45 Cal. App. 2d 87, 94 (Cal.App. 1941) ("In construing a statute it must be remembered that no law is to be construed in such a manner as to result in a palpable absurdity.")  The prosecutor could charge Chavez under 290(g)(2) which made it a felony to willfully violate any part of § 290.  The felony complaint and later the information identified the particular factual basis for the charge so Chavez was not left guessing what the alleged criminal activity was: the complaint alleged in Count 1 that "[o]n or about October 12, 1998" Chavez had "change[d] his/her residence address and did willfully fail to inform in writing within 5 working days, THE SAN JOSE POLICE DEPARTMENT, the law enforcement agency with which he/she last registered, of his/her new address." CT 16, 25.  There was no charging error, so Chavez's attorney did not engage in deficient performance by not telling Chavez  that there was such an error.  There is simply no authority for the proposition that counsel should tell his client something that is legally incorrect and irrelevant.  Cf. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (failure to take futile action can never be deficient performance).  Finally, even assuming arguendo that Chavez was charged under the wrong subsection of § 290, Chavez cannot show how knowing that would have affected his decision regarding the guilty plea:  pointing out an alleged charging error would simply have prompted the prosecutor to move to amend the charging instrument under California Penal Code

7

1  § 1009.[3]    The ineffectiveness claim is not colorable and therefore can and will be denied on the

2  merits even though state court remedies have not yet been exhausted for the claim.

3       New claim 3, i.e., the claim that the charging instrument was ambiguous, can and will be

4  denied even though unexhausted because it does not allege a federal constitutional violation and

5  therefore does not present a colorable claim for federal habeas relief.

6       State judicial remedies have been exhausted as to new claims 4 and 5, so the court need not

7  determine that they are not colorable before dealing with them.   The court also need not set the

8  case for further briefing to allow respondent to respond to these two claims because they are both

9  foreclosed by existing precedent.   New claims 4 and 5 both concerned the recidivist sentencing

10 scheme in California's Three Strikes Law.   Chavez urged that his current sentence amounted to a

11 second punishment for his earlier crimes in violation of his right under the Double Jeopardy

12 Clause of the Fifth Amendment (new claim 4) and imposed new punishment for his earlier crimes

13 in violation of his right under the Ex Post Facto Clause of the U.S. Constitution   (new claim 5).

14 The use of prior convictions to enhance sentences for subsequent convictions does not violate the

15 Double Jeopardy Clause.   See Spencer v. Texas, 385 U.S. 554, 560 (1967) (upholding use of prior

16 convictions to enhance sentences for subsequent convictions even if in a sense defendant must

17 relitigate in sentencing proceeding conduct for which he was already tried); Jackson v. Nelson,

18 435 F.2d 553, 553 (9th Cir. 1971) (dismissing contentions of equal protection, bill of attainder,

19 double jeopardy and ex post facto against recidivist statute as meritless).   Likewise, the application

20 ─────────────────────

21     [3]Even if the prosecutor could not have amended the information, Chavez would not be entitled to federal habeas relief on an ineffective-assistance claim because counsel's performance

22 did not deprive Chavez of any substantive or procedural right to which the law entitled him.   This rule against windfalls was illustrated in Lockhart v. Fretwell, 506 U.S. 364 (1993), where the

23 Court held that there was no prejudice where counsel failed to make a legal argument that would have been supported by legal authority in place at the time of trial which was subsequently

24 overruled.   See id. at 366.   Although the outcome of the trial likely would have been different if Fretwell's counsel had made the then-valid objection, Fretwell was not entitled to habeas relief

25 because it would have given him an unfair windfall.   See id. at 366, 369-71.   The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial

26 unreliable or the proceeding fundamentally unfair. . . .   Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural

27 right to which the law entitles him."   Id. at 372; see also United States v. Day, 285 F.3d 1167, 1170-71 (9th Cir. 2002).   Chavez's plea proceedings were not rendered fundamentally unfair even

28 assuming the wrong subsection of § 290 was written in the charging instrument.

8

of a sentencing enhancement due to a prior conviction does not violate the Ex Post Facto Clause because the sentencing enhancement is not a penalty for the prior offense but instead punishes the repetitive nature of the present offense.   See McDonald v. Massachusetts, 180 U.S. 311, 312-13 (1901); Fong v. United States, 287 F.2d 525, 526 (9th Cir.), cert. denied, 366 U.S. 971 (1961); see also United States v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990) (dismissing ex post facto challenge as meritless), cert. denied, 498 U.S. 1099 (1991).   "The statute, imposing a punishment on none but future crimes, is not ex post facto."   McDonald, 180 U.S. at 313.   New claims 4 and 5 are denied on the merits.

Having resolved all the new claims mentioned in the traverse, the court now addresses the Eighth Amendment and ineffective-assistance claims actually briefed on the merits by both parties and as to which the court issued an order to show cause.


B.     Cruel And Unusual Punishment Claim

A criminal sentence that is significantly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's proscription against cruel and unusual punishment.   See Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."   Id. at 289-90 (citation and quotation marks omitted).   "'The Eighth Amendment does not require strict proportionality between crime and sentence.   Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'"   Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).   Under this proportionality principle, the threshold determination for the court is whether petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.   Harmelin, 501 U.S. at 1005; Ewing, 539 U.S. at 30-31 (applying Harmelin standard).   Only if such an inference arises does the court proceed to compare petitioner's

sentence with sentences in the same and other jurisdictions.  See Harmelin, 501 U.S. at 1005; cf. Ewing, 538 U.S. at 23.    The threshold for an "inference of gross disproportionality" is quite high. See, e.g., id. at 30 (sentence of 25 years to life for conviction of grand theft (for shoplifting three golf clubs) with prior convictions was not grossly disproportionate); Harmelin, 501 U.S. at 1008-09 (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality).

In determining whether the sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004); see Ewing, 538 U.S. at 28.  In judging the appropriateness of a sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'"  United States v. Bland, 961 F.2d 123, 129 (9th Cir.) (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980), cert. denied, 506 U.S. 858 (1992).  The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists.  See Ewing, 538 U.S. at 25 (upholding 25-to-life sentence for recidivist whose current conviction was for grand theft (for shoplifting three golf clubs)); Rummel, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); Bland, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault).

10

The standard of review in § 2254(d) presents an additional problem for habeas petitioners asserting Eighth Amendment sentencing claims. In <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72-73 (2003), the Court rejected the notion that its case law was clear or consistent enough to be clearly established federal law within the meaning of 28 U.S.C. § 2254(d), except that it was clearly established that a gross disproportionality principle did apply to sentences for terms of years (as well as to the death penalty), but the precise contours of that principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."

Although the <u>Andrade</u> and <u>Ewing</u> decisions seemed to shut the door on most Eighth Amendment sentencing claims from Three Strikes defendants, the Ninth Circuit opened it again in <u>Ramirez v. Castro</u>, 365 F.3d 755 (9th Cir. 2004), and <u>Reyes v. Brown</u>, 399 F.3d 964 (9th Cir. 2005).

In <u>Ramirez</u>, the Ninth Circuit held that a 25-to-life sentence was grossly disproportionate to the crime committed where the current crime was petty theft with a prior theft-related conviction and the two prior strike convictions were robbery convictions. The current crime was the shoplifting of a $199 VCR that would have been a misdemeanor but could be charged as a felony only because Ramirez had a prior theft-related conviction. Because the current shoplifting episode was nonviolent and did not threaten "'to cause grave harm to society,'" the crime alone would not justify the 25-to-life sentence. <u>See</u> <u>Ramirez</u>, 365 F.3d at 768 (quoting <u>Harmelin</u>, 501 U.S. at 1003). Even adding Ramirez's prior convictions into the mix did not justify the harsh sentence because Ramirez's "prior criminal history is comprised solely of two 1991 convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years probation." <u>Id.</u> The court deemed the priors "nonviolent" because the force in one shoplifting episode was an accomplice driving over the foot of a security guard as they fled and the force used in the other shoplifting episode was Ramirez pushing a security guard out of his way as he fled the store. <u>Id.</u> The court also felt that the minimal nature of these crimes was shown by the one-year jail sentence offered in exchange for a guilty plea, which was far less than the 2, 3, or 5 years' imprisonment allowable under the statute. <u>Id.</u> at 768-

69.   Another factor considered was that the jail sentence was the only period of incarceration ever imposed before the current sentence.   Id. at 769.   And Ramirez's criminal past paled in comparison to that in Solem, Ewing, and Andrade, where the defendants had been repeatedly in and out of prison, had received substantial sentences and had been convicted of multiple felonies.   Ramirez, 365 F.3d at 769.   Moreover, Ramirez's criminal history was minimal compared to statewide averages for Three Strikes offenders.   Id.   Ramirez obtained habeas relief on his Eighth Amendment claim.

In Reyes v. Brown, 399 F.3d 964 (9th Cir. 2005), the Ninth Circuit considered a 26-to-life sentence for a petitioner whose current conviction was for perjury for making misrepresentations on a DMV driver's license application when he impersonated a friend.   His  prior convictions were a 1981 residential burglary conviction committed as a juvenile and a 1987 armed robbery conviction.   The   Reyes   court seemed to examine the current and past convictions separately, to determine whether either alone justified the harsh sentence, rather than looking at the whole picture of past and current crimes together.   See id. at 967 (describing analysis in Ramirez as first "conclud[ing] that Ramirez' sentence did not match the gravity of the triggering offense" and then "next consider[ing] Ramirez' criminal history to determine whether the extreme sentence matched his prior offenses").   In Reyes, the court gave almost no weight to the burglary prior conviction because the crime was committed when Reyes was a juvenile, resulted in just a 2-year sentence at the California Youth Authority, Reyes was released after serving just one year of the sentence, and the crime seemed nonviolent because the "little detail in the record suggests that Reyes was 'at some guy's house with some friends and . . . walked out with a radio that didn't belong to' him." Id. at 968 n.5 (citation omitted); see id. at 969 ("given that Reyes' first strike was earned as a juvenile, the gravity of his offenses in total rests heavily on his 1987 armed robbery conviction.") Reyes' 1987 armed robbery prior conviction was the "sticking point in this case," as it had resulted in a 9-year sentence (of which Reyes served 5 years) and there was inadequate information in the record to determine what the facts of the armed robbery were.   Id. at 968-69.   Reyes also appeared to downplay the evidence of other criminal activity by the defendant who had a history of non-

strike and nonviolent offenses -- including petty theft, being under the influence of a controlled substance, misdemeanor DUI and misdemeanor battery – the severity of which decreased over time.  Id. at 969 n.6.    The court remanded the case for the district court to develop the record because "the circumstances under which Reyes committed the robbery are not sufficiently developed in the record for us to determine whether the offense was a 'crime against a person' or involved violence."  Id. at 969.  The implication was that if the armed robbery wasn't bad enough, Reyes should be granted habeas relief.

In between Ramirez and Reyes, the Ninth Circuit decided another Three Strikes case and found a 25-to-life sentence that was constitutional.    See Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004).    Rios shoplifted two watches having a combined value of $79.88, was chased by a loss prevention officer and was apprehended in the store parking lot after a minor struggle.  Id. at 1083. Rios' current conviction was for petty theft with a prior theft-related conviction and second degree commercial burglary.    His two strike convictions were from a 1987 guilty plea to two counts of robbery.    The court determined that "Ewing and Andrade compel the conclusion that Rios's sentence was not grossly disproportionate to his crime in light of his criminal history."    Rios, 390 F.3d at 1086.    The court considered Rios' real sentence to be lighter than that imposed in Andrade because Rios had to serve only 25 years while the Andrade defendant had to serve 50 years before being eligible for parole – a difference resulting from the fact that one of Rios' two 25-to-life sentences was stayed and neither of Andrade's sentences was stayed.  Rios, 390 F.3d at 1086.  The court found Ramirez distinguishable:  "Unlike the defendant in Ramirez, Rios struggled with the loss prevention officer and tried to avoid apprehension.    Additionally, his prior robbery 'strikes' involved the threat of violence, because his cohort used a knife.  As did the defendants in Ewing and Andrade [], Rios has a lengthy criminal history, beginning in 1982, and he has been incarcerated several times."  Rios, 390 F.3d at 1086.  Rios' 25-to-life sentence did not offend the Eighth Amendment under the circumstances.  See id.

13

Chavez's sentence of 25-to-life is undoubtedly harsh.  He cannot earn time credits and must serve a full 25 years before he is even eligible for parole.  Chavez's current felony conviction would not alone support such an extreme sentence, as it was for a registration crime that did not involve violence against a person or a crime against property.  The offense of failing to register impedes law enforcement officials' ability to keep tabs on the sex offenders.[4]  But Chavez's current conviction is not viewed in a vacuum.

Chavez received a stiffened sentence because he was a recidivist.  His recidivist nature must be considered in evaluating the constitutionality of his sentence.  See Ramirez, 365 F.3d at 768 (because defendant "was sentenced as a recidivist under the Three Strikes law, 'in weighing the gravity' of his offense in our proportionality analysis, 'we must place on the scales not only his current felony,' but also his criminal history") (quoting Ewing, 538 U.S. at 29).  Once one considers Chavez's criminal history -- a history that was lengthy, included several violent crimes, included repeated stays in custody, a failure to benefit from efforts to rehabilitate him, and no apparent effort to overcome his substance abuse problem –  the severity of his sentence does not seem so extreme.  Although the decisions in Ramirez and Reyes suggest that not all Three Strikes sentences will pass constitutional muster, Chavez's case does not present the sort of facts that give rise to the inference of disproportionality in light of his current crimes and criminal history.

Unlike the defendant in Ramirez, Chavez had a very lengthy and continuous criminal history.  His history is summarized from the information in the pre-sentence report, the accuracy of which he does not contest.

---

[4]Today, the offense of failure to register also impedes the ability of other members of a community to take appropriate protective steps to avoid becoming crime victims of sex offenders residing nearby.  The sex offender registration information is now easily available to the public on the internet.  This use of sex offender registration information will not be considered in determining the purpose of the sex offender registration requirements in 1998 as it is not known whether the web site even existed then.

Strikes 1 and 2:  Chavez had suffered a conviction in 1994 for assault with intent to commit rape and two counts of furnishing PCP to a minor.  He was sentenced to nine years in state prison and served about four years.  The factual background of these crimes was described in the probation officer's pre-sentence report:  Chavez had brought two female juveniles to his mother's house and furnished them with beer and PCP.  Chavez took off his clothes, declared his intent to have sex, grabbed one of the girls and tried to unbutton her pants (as the other girl ran away).  After the girl pushed Chavez's hands away, he punched her in the mouth.  The girl escaped.

Strikes 3-5:  Chavez was convicted in 1985 of two counts of assault with a semi-automatic weapon, exhibiting a firearm/deadly weapon to resist arrest, possession of a controlled substance and two misdemeanor counts of driving under the influence and evading a police officer.  He was sentenced to 12 years in prison.  These convictions resulted from a traffic stop.  When the stopping officer made contact with Chavez's vehicle, Chavez hit the gas pedal and dragged the officer down the street.  Chavez crashed his vehicle and fled on foot.  The original officer caught up with him and they struggled; Chavez grabbed the officer's baton and hit the officer in the head causing a cut that required four stitches.  Chavez also had momentarily obtained the officer's gun before he was subdued.

Strike 6:  Chavez was convicted of robbery and received a five year sentence in 1980 based on his robbery of a hotel patron in the middle of the night.  When the 63-old victim opened his hotel door to answer a knock at the door, Chavez pointed a gun at him, ordered the man into the bathroom, locked the door, and took his wallet.

In addition to the foregoing prior convictions that counted as strikes under California's Three Strikes Law, Chavez had two prior prison terms that could have resulted in an even longer sentence but were dismissed by the trial judge.  Chavez had been sentenced to two years in prison for driving/taking a vehicle without the owner's permission in 1983.  This conviction was based on Chavez taking the car of a woman who had refused his romantic advances in a bar.  He stole her car while she was in the bathroom and shortly thereafter was involved in a hit-and-run accident.  Chavez also had been sentenced to 16 months in state prison in 1983 for a conviction for escaping

15

1   from a jail with force.  <u>See</u> Resp. Exh. D, Petition For Review, p. 7.

2       Chavez also had committed numerous other offenses as a juvenile and adult:  "Between
3   1973 and 1979, as a juvenile, he was found to have committed eight offenses ranging from glue
4   sniffing to burglary and auto theft.  As an adult, he had six misdemeanor convictions ranging from
5   obstructing a police officer to receiving stolen property occurring between 1979 and 1985."  <u>Id.</u>
6   at 7-8.

7       As the foregoing shows, Chavez had suffered numerous convictions before the current
8   offense.  Chavez's priors were more serious and extensive than those in <u>Reyes</u>, <u>Rios</u>, or <u>Ramirez</u>.

9       Unlike the defendant in <u>Ramirez</u>, Chavez had repeatedly spent time in state prison as well
10  as county jail.  Chavez also had been on parole when he committed the registration offense.  The
11  probation officer was of the view that Chavez had "demonstrated no desire, dating back to his
12  juvenile years, to live a law-abiding and productive lifestyle."  CT 55.

13      Most importantly, Chavez's criminal history had violence in it, unlike that in <u>Ramirez</u>.  And
14  it involved more violence than potentially existed in <u>Reyes</u>.  One of Chavez's strike convictions
15  was for assault with the intent to commit rape, a crime during which he punched the victim in the
16  face.  There is no need for further development of the record for this court to determine that
17  punching a girl in the face was a crime of violence and was directed against a person.  <u>Cf.</u> <u>Reyes</u>,
18  399 F.3d at 969 (remanding case to determine facts behind the armed robbery conviction).  In
19  another crime, Chavez dragged a police officer with his vehicle and then hit the officer in the head
20  with a police baton.  There is no need for further development of the record for this court to
21  determine that this conduct was a crime of violence and was directed against a person.  And the
22  robbery by pointing a gun at a hotel guest also was a crime of at least potential violence and was
23  directed at a person.  Even considering only Chavez's strike convictions, his criminal history was
24  more violent than that in <u>Ramirez</u> or potentially in <u>Reyes</u>.  If one also considers the non-strike
25  prior convictions, the picture does not get any better for Chavez.  Several of Chavez's non-strike
26  prior crimes had at least the potential for harm to other persons (e.g., Chavez was involved in a hit-
27  and-run accident while driving a stolen car and had escaped from jail "with force," although the

28

force was not described in the report).

A 25-to-life sentence under the Three Strikes Law for a failure-to-register conviction was held to violate the Eighth Amendment in People v. Carmony, 127 Cal. App. 4th 1066, 1084 (Cal. Ct. App. 2005), but that case is distinguishable on the facts.  Carmony was prosecuted for failing to update his registration within five days of his birthday.  The court viewed Carmony's failure to update as a technical violation because his parole agent was aware that his registration information had not changed since he registered a month earlier and Chavez was arrested at the address at which he had registered.  Id. at 1071-72.  By contrast, Chavez had failed to register a change of address so the registration on file would not have enabled authorities to find him.  The Carmony court did not consider a failure to register a change of address to be the same kind of technical violation as Carmony had committed.  See id. at 1082 n.11.  It cannot be said that requiring Chavez to register upon a change of address "served no stated or rational purpose of the registration law and posed no danger or harm to anyone."  Id. at 1073.  Chavez's failure to register his change of address defeated the core purpose of the registration requirement – enabling police to keep track of sex offenders.  See id. at 1072 ("purpose of the sex offender registration law is to require that the offender identify his present address to law enforcement authorities so that he or she is readily available for police surveillance"); People v. Meeks, 123 Cal. App. 4th 695, 709 (Cal. Ct. App. 2004) ("California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses").  Carmony thus does not aid Chavez's cause.

When viewed in light of his criminal history and current felony offense, Chavez's is not that "'rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'"  Ewing, 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

The California appellate court's rejection of Chavez's claim was not contrary to or an unreasonable application of clearly established federal law as determined by the U. S. Supreme Court.  The court reasonably applied the gross disproportionality standard.  The state court

17

1     considered the current offense and Chavez's strike convictions as well as his criminal history other

2     than the strike convictions. The state court reasonably concluded the sentence was not

3     unconstitutionally disproportionate in light of Chavez's current offense and criminal history. <u>See</u>

4     Cal. Ct. App. Opinion, p. 24. Chavez is not entitled to the writ on his Eighth Amendment claim.

5

6     C.     <u>Ineffective Assistance Of Counsel Claim</u>

7         The Sixth Amendment right to counsel guarantees not only assistance, but effective

8     assistance, of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). A defendant who

9     enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent

10    character of the guilty plea by showing that the advice he received from counsel was not within the

11    range of competence demanded of attorneys in criminal cases. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52,

12    56 (1985); <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). A petitioner must satisfy the two-part

13    standard of <u>Strickland v. Washington</u>, 466 U.S. 687, i.e., he must show that counsel's performance

14    was deficient and that the deficient performance prejudiced his defense. The petitioner satisfies

15    the prejudice requirement by showing that there is a reasonable probability that, but for counsel's

16    errors, he would not have pleaded guilty and would have insisted on going to trial. <u>See Hill</u>, 474

17    U.S. at 59; <u>Iaea v. Sunn</u>, 800 F.2d 861, 864-65 (9th Cir. 1986).

18        Chavez argues that he received ineffective assistance of counsel because counsel did not

19    object to his sentence as cruel and unusual. The ineffective assistance claim fails with the

20    predicate claim. There is no merit to Chavez's Eighth Amendment claim that his sentence

21    amounted to cruel and unusual punishment. Counsel thus did not engage in deficient performance

22    by failing to make the futile argument. And counsel did not engage in deficient performance by

23    not arguing that the sentence violated the California constitutional right to be free of cruel or

24    unusual punishment, because that argument also would have been futile as shown by the California

25    Court of Appeal's rejection of it. Neither the federal nor state constitutional claims would have

26    succeeded, so there was no deficient performance in failing to make those arguments. There also

27    was no prejudice resulting from the failure to make the futile argument. The California Court of

28

1   Appeal's rejection of the ineffective assistance claim was not contrary to or an unreasonable

2   application of clearly established federal law.  Chavez is not entitled to the writ on this claim.

3

4   **CONCLUSION**

5         The petition for writ of habeas corpus is denied on the merits.   The clerk shall close the

6   file.

7         IT IS SO ORDERED.

8   DATED:  June _20__, 2005                                   ___S/Susan Illston_____

                                                     SUSAN ILLSTON

9                                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28